UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re<br>Powers Lake Construction<br>Company, Inc.,<br>                Debtor. | Chapter 7<br><br>Case No. 10-23404-svk |
| Steven R. McDonald, Trustee,<br>                Plaintiff,<br>v.<br><br>Little Limestone, Inc.,<br>                Defendant. | Adversary No. 12-2187 |

**MEMORANDUM DECISION ON PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

On March 10, 2010, Powers Lake Construction Co. (the "Debtor") filed a petition under Chapter 11 of the Bankruptcy Code. The Chapter 11 reorganization did not succeed, and on December 16, 2010, the Debtor's case was converted to Chapter 7. Steven McDonald is the duly appointed and acting Chapter 7 Trustee. On March 9, 2012, the Trustee filed this adversary proceeding against Little Limestone, Inc. (the "Creditor") to recover a preferential transfer in the amount of $10,919.42 (the "Transfer"). The Creditor answered and raised various affirmative defenses, most particularly challenging the Trustee's claim that the Debtor had an interest in the transferred funds. The Creditor claims that the Transfer consisted of trust funds as defined by Wis. Stat. § 779.02(5). The Trustee moved for Summary Judgment, and the Creditor objected. After considering the parties' submissions, this Court issues this Memorandum Decision.

JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This preference action is a core proceeding over which this Court can enter a final order,

notwithstanding the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *In re USA Baby, Inc.*, 674 F.3d 882, 883-84 (7th Cir. 2012), the Seventh Circuit stated: "The Supreme Court held in [*Stern v. Marshall*] that bankruptcy judges may not enter final judgments on common law claims that are independent of federal bankruptcy law." A preference claim is not independent of federal bankruptcy law; indeed, "[p]reference claims only exist as a matter of bankruptcy law. The right of recovery under § 547 is both unique and vital to bankruptcy because it serves one of bankruptcy's fundamental goals, the equal distribution of estate property to creditors." *KHI Liquidation Trust v. Wisenbaker Builder Servs. (In re Kimball Hill, Inc.)*, 2012 Bankr. LEXIS 4827, *31 (Bankr. N.D. Ill. Oct. 12, 2012). Because the preference claim stems from the bankruptcy, *Stern v. Marshall* is satisfied. *Id.* This holding is "borne out by every published opinion in which a *Stern* challenge to a bankruptcy court's authority to enter final orders in a preference avoidance action has been raised." *Id.*, at *31-32 (citations omitted).

## STATEMENT OF FACTS

C.D. Smith Construction, Inc. ("C.D. Smith") was the prime contractor on a project known as the Fontana Wastewater Treatment Plant (the "Project") and hired the Debtor as one of its subcontractors. The Debtor in turn contracted with the Creditor to supply limestone for the Project. The Creditor delivered limestone in October and November 2009 and made a final delivery in January 2010. The following chart illustrates the amounts, dates, and terms of the invoices issued by the Creditor to the Debtor:

| Invoice Date | Terms | Amounts |
| --- | --- | --- |
| 10/31/09 | Net 60 | $7,243.23 |
| 11/30/09 | Net 45 | $602.50 |
| 12/31/09 | Net 30 | $422.60 |
| 01/31/10 | Net 30 | $2,108.99 |
|  |  | $542.10 |
| Total |  | $10,919.42 |

2

Despite the various terms stated on the invoices, the Creditor alleges that the parties agreed that the Debtor would pay the Creditor once all the materials had been delivered as required for the Project. On February 25, 2010, C.D. Smith issued a check to the Debtor for the Project. That same day, the Creditor issued its lien waiver, and the Debtor issued a check to the Creditor in the amount of $10,919.42.

ANALYSIS

Summary judgment is appropriate only when the evidence presented shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; *Eisencorp, Inc. v. Rocky Mountain Radar, Inc.*, 398 F.3d 962, 965 (7th Cir. 2005). All inferences are drawn in the light most favorable to the non-moving party. *Id.* The Trustee bears the burden of proof that the Transfer is an avoidable preference as defined by Bankruptcy Code § 547. 11 U.S.C. § 547(g).

Section 547(b) of the Bankruptcy Code allows the Trustee to avoid certain interests of the debtor in property. The Creditor disputes that the Transfer involved the Debtor's property because the transferred funds were held in trust for the Creditor pursuant to Wis. Stat. § 779.02(5),[1] which provides:

> The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person.

The Trustee recognizes the contractor trust fund statute, but contends that to successfully

---

[1] The parties also cite Wis. Stat. § 779.16, but this statute applies to moneys paid "for public improvements." The record is silent as to whether the Fontana Wastewater Treatment plant is such an improvement, but the Court's analysis does not change.

3

assert that the Transfer was made with trust funds, the Creditor must trace the funds. The Trustee relies on *Wisconsin Dairies Coop. v. Citizens Bank & Trust*, 160 Wis. 2d 758, 768, 467 N.W.2d 124, 128 (1991) (citation omitted), which held: "'[M]onies formerly held in trust fund status lose their trust fund status if they are paid out to satisfy obligations to parties other than trust fund creditors.'" *See also In re Straight Arrow Constr. Co.*, 393 B.R. 652 (Bankr. W.D. Wis. 2008) (subcontractor's claims are secured by trust funds to the extent the funds are traceable to specific projects on which the subcontractor worked, and only to the extent that the funds from the project remain in the hands of the debtor).

The party claiming a trust interest in a contractor's commingled funds bears the burden to trace the funds received to any funds remaining in the debtor's account. *Meoli v. Kendall Elec., Inc. (In re R.W. Leet Elec., Inc.)*, 372 B.R. 846, 855-56 (B.A.P. 6th Cir. 2007). The Trustee points out that between the time when the check from C.D. Smith was deposited in the Debtor's checking account (February 26, 2010) and the time when the check to the Creditor cleared the Debtor's bank (March 3, 2010), the Debtor's checking account ran a negative balance, destroying the Creditor's trust fund. The "lowest intermediate balance test" is the rule for construing trust proceeds commingled in a bank account. Under that test:

> [A] court will follow the trust fund and decree restitution from an account where the amount on deposit has at all times since the commingling of the funds equaled or exceeded the amount of the trust fund. . . . **Where, however, after the commingling, all the money is withdrawn, the trust fund is treated as lost, even though later deposits are made into the account**. Should the amount on deposit be reduced below the amount of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account. This is based on the fiction that the trustee would withdraw non-trust funds first, retaining as much as possible of the trust fund in the account.

*Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir. 1988) (emphasis added); *see also First Federal of Mich. v. Barrow*, 878 F.2d 912, 916 (6th Cir. 1989)

(citation omitted) ("'[W]here, after the appropriation and mingling, all of the moneys are withdrawn, the equity of the cestui is lost, although moneys from other sources are subsequently deposited in the same account.'").

Applying the lowest intermediate balance test here demonstrates the dissipation of the Creditor's trust fund before the Creditor's check was presented. After C.D. Smith's check was credited to the Debtor's account on February 26, 2010, debits reduced the balance in the account to less than zero. On March 1 and 2, 2010, the account showed a negative balance. The Debtor made two large deposits on March 3, 2010, allowing the Debtor's check to the Creditor to clear on that date.[2] The bank records conclusively establish that the account balance was negative before the Transfer was made, destroying the trust fund under the lowest intermediate balance test. Although some courts have held that replenished funds can regain their trust status under certain circumstances, this applies "only when the restored funds are deposited into a segregated trust account." *Watts v. Pride Util. Constr., Inc. (In re Sudco, Inc.)*, 2007 Bankr. LEXIS 3730, *21 (Bankr. N.D. Ga. Sept. 27, 2007) (citation omitted). If the funds are deposited back into the debtor's individual commingled account, "the restored funds are only treated as trust funds if the evidence shows that the debtor intended to make restitution." *Id.* at *22 (citation omitted). The record here does not reflect any attempt on the part of the Debtor to make restitution.

Accordingly, the Transfer was made with property of the Debtor, and the Trustee has established the first element of an avoidable preferential transfer. The Affidavits and documents filed with the Trustee's Motion show that the Trustee also is entitled to summary judgment on the other elements of a preferential transfer: (1) the Transfer was made to a creditor on an antecedent debt; (2) the Debtor was insolvent; (3) the Transfer was made within 90 days of the

---

[2] The date the check clears the bank is the operative date for application of preference defenses. *See Barnhill v. Johnson*, 503 U.S. 393, 402 (1992) ("[W]e see no basis for concluding that the legislative history . . . should cause us to adopt a "date of delivery" rule for purposes of § 547(b).").

5

Debtor's petition; and (4) the Transfer enabled the Creditor to receive more than other similarly situated creditors in this Chapter 7 case.

However, the Creditor asserts two affirmative defenses that it alleges would defeat the Trustee's claim – contemporaneous exchange for new value, and ordinary course of business. Section 547(c)(1) provides that a trustee may not avoid a transfer to the extent the transfer was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange. . . ." 11 U.S.C. § 547(c)(1). In support of this defense, the Creditor relies on the Affidavit of its President alleging that the Debtor and Creditor agreed that the Debtor was not obligated to pay the Creditor until all limestone had been provided, and that the Creditor issued a lien waiver on the same day and in exchange for the Transfer. The Trustee's claim is well-taken that the payment of invoices from four months to one month old is not "substantially contemporaneous," but the lien waiver was delivered on the same day as the Debtor's payment, and could qualify for the contemporaneous exchange defense. However, for the lien release to constitute a contemporaneous exchange for new value, the new value must be "given to the debtor." 11 U.S.C. § 547(c)(1)(A). Most courts hold that a third-party lien release does not establish the requisite new value to the debtor. *See In re Chase & Sanborn Corp.,* 904 F.2d 588 (11th Cir. 1990) (release of lien rights on owner's property does not constitute new value to the debtor); *In re Hatfield Electric Co.*, 91 B.R. 782 (Bankr. N.D. Ohio 1988) (same). A minority have found sufficient value if, "at the time of the preference payment, the owner still owed sufficient sums to the debtor on the project to permit a setoff against the owner's payment to the sub." *In re J.A. Jones*, 361 B.R. 94, 103 (Bankr. W.D.N.C. 2007). Here, at the time of the Transfer on March 3, 2010, no payments were due from C.D. Smith to the Debtor. Therefore, the lien release did not provide contemporaneous new value to the Debtor. The Transfer was not

6

substantially contemporaneous with the Creditor's shipments of limestone, and the lien release did not provide new value to the Debtor.  Accordingly, there is no genuine issue of material fact that the Transfer was not a substantially contemporaneous exchange.

The Creditor also raises the ordinary course of business defense.  Section 547(c)(2) provides that a transfer may not be avoided "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms. . . ."  11 U.S.C. § 547(c)(2).  The ordinary course of business defense "by its nature, is a fact-intensive" defense that ordinarily "should be decided only after trial."  *Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of Am.)*, 460 B.R. 360, 366 (Bankr. S.D.N.Y. 2011); *see also IT Group, Inc. v. Anderson Equip. Co. (In re IT Group, Inc.)*, 332 B.R. 673, 677 n.4 (Bankr. D. Del. 2005) ("[T]he ordinary course of business defense is a highly fact-intensive issue, and it is rare indeed for it to be resolved in defendant's favor on a motion for summary judgment.").

The Creditor alleges that the payment was made in the ordinary course of business because the payment was equal to the amount of invoices that the Creditor provided to the Debtor.  The Trustee alleges that the payments were not made in the ordinary course because three of the four invoices were paid late, and the dates of the payments were sporadic.  The Court finds that a material issue of fact exists as to this defense: within a day after receiving payment from C.D. Smith, the Debtor paid the Creditor.  Ignoring invoice terms and making payment when paid by the general contractor may well be standard in the construction industry.  Further, the Debtor and Creditor could have agreed to this payment arrangement.  The Trustee cannot simply point to the invoices and claim that as a matter of law the Creditor's defense fails.  The

7

evidence presented is sufficient to establish an issue of fact as to whether this was a payment in the ordinary course of business.

## CONCLUSION

The Trustee has carried his burden on proving the elements of a preference, but a genuine issue of material fact exists as to whether the Transfer was made in the ordinary course of business of the Debtor and the Creditor or according to ordinary business terms. Therefore, the Court will grant in part and deny in part the Trustee's Motion for Summary Judgment and schedule a trial to determine whether the Transfer is excepted from the Trustee's recovery by the ordinary course of business defense.

Dated: November 28, 2012.

By the Court:

*Susan Kelley*
Susan V. Kelley
U.S. Bankruptcy Judge